Going with something more easily to digest, on the appeal, this started off as a detained removal process, and then the petitioner's daughter was going to turn 21 years old, which was going to open a door to a visa that would solve the problem in terms of the petitioner being able to adjust his status in the United States under INA 245I. So a key element is when the appeal filed in December the 9th, 2016, in the brief there was a motion to remand for filing and a motion to continue the case until January 2018 for the daughter to turn 21. When you look at the board's decision, they never addressed it at all. So that's reversible error. So the case should be remanded back for the BIA to clarify for the record whether or not the motion to remand and continue until January 2018 was appropriate. Subsequently, the daughter turned 18, I mean, excuse me, 21 years of age, and a visa petition was filed and approved. There was another case that came to the circuit. First, the petitioner had a removal proceeding, but then he had an old deportation proceeding where he was deported in his absence, in absentia. That second case, after this was on appeal, was reopened. And then it was remanded to the same judge who handled the under, well, the same court that handled the underlying case here. Ultimately, it went up on appeal, it was denied, and then the circuit denied the case primarily because there was already a case active dealing with the similar issues of adjustment of status and visa approval. So what we have really here is, oh, by the way, there was supposed to be a conference with ICE on March the 10th regarding the gentleman's status. However, the day after President's Day, the service removed him to El Salvador. So he was deported, which- Presently been deported, right? What's that? He has presently been deported. Yes, he had just been deported the day after President's Day last month. That was on a Tuesday. The day after President's Day, I had a total of six clients that were attacked by ICE on various levels, either to appear for removal or threatening removal. So there was a major, some sort of calamity going on where ICE really did interior enforcement like I've never seen before. And this gentleman got swept up, taken out, and deported, even though he was given a letter that they were going to wait until March the 10th, which would have given us time to be here today. So unfortunately, he's currently in El Salvador and running for his life right now. But looking at this case, this is one of the cases the late Judge Reinhart had talked about. There was a dissent that he did in a similar type of case dealing with visas. And what happens in chain migration cases when time goes by so long, an immigrant is here so long, and he has an equity that arises? And this is a case of a system that should have worked. The case simply should have been remanded back, or the board should have settled the question on its opinion, and it didn't. And as a result, the man paid all his fees. He paid his thousands of dollars. He had to pay an extra thousand dollars to get a medical in custody waiver, and he had all the fees. Everything, all the applications submitted, but he never got a decision on whether he can adjust status. The case that he had before the daughter turned 21 was a very old visa petition filed in the 90s through his then-permanent resident mother. And she's now a citizen. She came today. She wanted to see how this all works. I said, that's wonderful. So she's here. And the visa petition was approved. However, a problem arised because the respondent had gotten married after the case had been approved and before the mother officially became a U.S. citizen. After she became a citizen, a second I-130 through the mother was filed where we attempted to recapture the original priority date and adjust him as a married son or daughter of a U.S. citizen. Well, the board addressed that and rejected that argument. Also, another interesting question comes up on the, there was a conviction for assault with a deadly weapon, and apparently there were amendments made to INA 245, Penal Code Section 245A1, after 20, I want to say 2011, where it may be, in terms of the statute and the current immigration law, ambiguous that it is or is not an aggravated felony. It may possibly not be an aggravated felony under the amendments. But doesn't our Vazquez-Gonzalez case control that issue? Well, yes. There is a decision on that. But they mentioned that there were two different amendments that happened before and after. And I believe on that case, that was the older statute that was passed. In what way was the statute changed? It bifurcated different types of assaults dealing, not with a firearm. He didn't have an assault with a, there was no firearm. It was a club. But the way the wording of the statute is, it deals with issues of assault not involving a firearm that may not possibly be an aggravated felony. And the board didn't address that. I have another client that got convicted under the prior statute that was before the amendments. And before the amendments, they said that Ninth Circuit law makes it an aggravated felony under the precedent. Also, we filed for asylum, convention against torture, and something called NACARA, Nicaraguan Adjustment Act. If he is deemed not to have been convicted of a quote unquote aggravated felony, he would have qualified for a very simplified version of adjustment of status called special rule cancellation or removal, which we filed. So for all those reasons, I would request that this court grant the petition remand back with instructions to have the board issue a new decision. Or on the alternative, if the respondent can't be returned to the United States, conduct a decision waiving his presence. Isn't your adjustment of status your best argument? And doesn't that really require a reopening rather than having this court? This court is limited to the record that's presently made. Yeah, if it's remanded and it's reopened by the board on the remand, then he could seek adjustment on the reopening. But you can seek a reopening. Well, the question that we gave the board was never answered. If they would have granted the remand, then we would have been able to adjust status before the immigration court, before he was removed from the United States. So we need the remand because we need the board to decide whether or not that was an abuse of discretion or not. Because they never ruled on it. They never said a word about it. So since they didn't rule on the request to remand for this consideration, which is involving a motion to continue, we don't have a record here to know what the board's reasoning was. They never ruled on it at all. So it's required to be remanded, and if they do reopen it, then we can proceed with adjustment. Now, you mentioned that your client has been removed to El Salvador. You mentioned there was a letter he had. Was that an order from this court, or what was that? No, that was a letter from Immigration Custom Enforcement at the detention center in Atalanta, where he's given a letter that his case will be reviewed up to 180 days. And they had listed March the 11th, so his family had scanned it. They showed it to me in my phone so that we had the understanding that he would at least be here today, at least until the 11th, to see where the path is, which would have greatly simplified the issues. Okay. Very well. Okay, thank you so much. Good morning, Your Honors. Good morning. Joseph O'Connell on behalf of the Attorney General. Thank you for having me today. First, as Petitioner noted, Mr. Moran was lawfully removed to El Salvador on February 20th. That was after this court denied two motions for a stay of removal. So that removal was completely lawful. So there's no issue with that as far as I can tell today. Your Honors, the agency correctly concluded that Mr. Moran is not eligible for asylum or withholding of removal on the basis of his criminal conviction. He's also not eligible for deferral of removal under the CAT. And any past or present visa petition has no bearing on the actual outcome of this case. I know there's a lot of issues, and so I'll start with adjustment first. As Your Honor noted, I think that was his most strong argument. So in terms of adjustment, you need to have a visa that's immediately available. Mr. Moran's mother filed a visa petition on his behalf in 1990. That visa petition was automatically revoked in the year 2000 when Mr. Moran got married. In 2016, his mother filed another visa petition, and he asked the immigration judge to sort of backdate that visa petition. But he has no legal support for that. There's no legal authority that a second, subsequent visa petition is essentially backdated to 1990. And so as far as his daughter did file a visa petition on his behalf, and that is immediately available, number one, as Your Honor noted, his proper recourse is to file a motion to reopen with the board. This is new evidence that the board has not considered. Number two, his relief of adjustment of status is highly speculative at this time, especially in light of the fact that he has this criminal conviction that is categorically a crime involving moral turpitude. So I can't speak for the agency in the first instance because he hasn't submitted this information to the board in a motion to reopen. But again, he has a serious, serious impediment to adjustment of status in this case. But again, the proper recourse for the petitioner is to file a motion to reopen and then submit this evidence so they'll allow the board to essentially adjudicate it. So again, any visa petition past or present or current has no bearing on the correctness of the agency's decision in this case. So in terms of asylum, the immigration court also, immigration judge also correctly concluded that under Grahia, his conviction for assault with a deadly weapon categorically constitutes an aggravated felony, unless the court has any questions on the aggravated felony asylum issue, I'll move to the withholding issue. Under withholding of removal, a particularly serious crime is defined as any felony for which the sentence is an aggregate five years. Petitioner claims that he did not have a five year sentence, but at 495 of the record, it clearly states that he was sentenced to five years in state prison and that was suspended. But the suspension has nothing, no bearing on whether or not it's a particularly serious crime. He does have, also he does have two A numbers. So there were deportation proceedings in this case. In 1987, Mr. Moran was issued an order to show cause and he was placed in deportation proceedings. He was issued an in absentia deportation order, and he was actually removed to El Salvador in 1990 pursuant to that in absentia deportation order. He had, he unlawfully re-entered. A second round of removal proceedings were initiated. That's the, that's the basis of this petition for review. So while this petition was pending, Mr. Moran moved to reopen those earlier deportation proceedings. And the immigration judge did momentarily reopen those proceedings. But when the immigration judge was informed that he had this entirely second round of removal proceedings and he had the second A number, the immigration judge terminated the proceedings. And then Mr. Moran filed a petition for review from, from that reopen proceedings. But we, I filed a motion to dismiss, which the court granted. And that petition for review is now closed. So that, that reopening and termination also has no bearing on the correctness of the board's decision in this case. Lastly, Mr. Moran claimed that he was eligible for cat protection but his claim was it, it, it is not supported by the record evidence. So Mr. Moran claimed that in 1990 during the Salvadoran Civil War, he was arrested by Salvadoran soldiers for violating curfew. His claim for relief is, is, is now based on his, his tattoos. He, he believes that in El Salvador these tattoos will be misinterpreted as gang tattoos, but again, this is just a series of suppositions. And so the record certainly doesn't compel the conclusion that he will be tortured in El Salvador by anyone, much less by a buyer with the acquiescence of the Salvadoran government. So I know there's a lot of issues. I think that there's one more issue. Mr. Moran also argued extensively that Pereira somehow controls this case, but we filed a 28-J, and this court's decision in Caranguife forecloses any sort of argument in that regard. So unless the court has any questions on any of those issues, I'd be happy to address it. I think not. No. All right, very well. Thank you for having me. Thanks to all counsel for their argument. The case just argued is submitted.
judges: M. Smith, Owens, Settle